UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X

JANICE YUN,                                   :
                                              :
                        Plaintiff,            :
                                              :
            v.                                :    CASE NO.: _____
                                              :
PARIS BAGUETTE AMERICA, INC.,; PARIS          :
BAGUETTE BON DOUX, INC.; PARIS                :
BAGUETTE FAMILY, INC.; PARIS BAGUETTE         :
USA INC.; PARIS CROISSANT GROUP d/b/a         :
PARIS BAGUETTE; SPC GROUP d/b/a PARIS         :
BAGUETTE; DAVID GLEASON, in his official      :
and individual capacities; and YOUNG JO CHOI, :
in his official and individual capacities,    :
                                              :
                        Defendants.           :
-----------------------------------------------------------X

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Janice Yun ("Ms. Yun" or "Plaintiff"), by and through her undersigned

counsel, as and for her Complaint in this action against Defendants Paris Baguette America,

Inc.; Paris Baguette Bon Doux, Inc.; Paris Baguette Family, Incorporated; Paris Baguette

USA Incorporated; Paris Croissant Group d/b/a Paris Baguette; and SPC Group d/b/a Paris

Baguette (together, "Paris Baguette," the "Company" or the "Corporate Defendants"), as well

as David Gleason and Young Jo Choi (collectively, "Defendants"), hereby alleges as follows:

## NATURE OF THE CLAIMS

1.      This is an action seeking declaratory, injunctive and equitable relief, as well as

monetary damages and attorneys' fees and costs, to redress Defendants' unlawful employment

practices against Plaintiff. From the point at which she advised the Company of her high-risk

pregnancy resulting from a successful IVF procedure, Plaintiff was subjected to demeaning

sexual harassment based on her gender and pregnancy, as well as abusive working conditions

during her pregnancy despite her vulnerable physical and emotional state. Defendants' pattern of unlawful conduct culminated in the demotion and constructive discharge of Plaintiff when she returned from her job-protected maternity leave, after she had been denied equal pay and other terms and conditions of employment given to her male counterparts and stripped of the franchise sales and development duties which she had performed successfully for years until they were reassigned to a newly hired male employee.

2.      Specifically, Defendants' unlawful employment practices included (a) their unlawful interference with, restraint, and denial of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq., and their violations of the New Jersey Family Leave Act, N.J.S.A. §§ 34:11B-1 et seq. ("NJFLA") and New Jersey Temporary Disability Benefits Law, N.J.S.A. §§ 43:21-25 et seq.; (b) their discriminatory treatment against Plaintiff, including subjecting her to unequal pay, demotion, constructive discharge and other adverse employment actions, due to her pregnancy (including pregnancy-related disabilities) and her gender, in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1 et seq. ("NJLAD"), as amended by the Allen Equal Pay Act; and, upon exhaustion of administrative prerequisites to asserting such claims herein by amending this Complaint, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended by the Pregnancy Discrimination Act ("Title VII"), the Equal Pay Act, 29 U.S.C. §§ 206(d)(1) et seq. ("EPA"), the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"); (c) their harassment of Plaintiff due to her pregnancy (including pregnancy-related disabilities) and her gender, in violation of NJLAD and, upon exhaustion of administrative prerequisites to asserting such claims herein by amending this Complaint, Title VII, the EPA and ADA; and (d) their unlawful retaliation against Plaintiff after she complained about Defendants' discrimination, harassment and other adverse employment actions in violation of the FMLA, NJFLA, and NJLAD and, upon exhaustion of

administrative prerequisites to asserting such claims herein by amending this Complaint, Title VII, the EPA and ADA .

3.       Defendants' unlawful employment practices against Plaintiff were knowing, intentional, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff and her protected statutory rights under both federal and state law. Defendants have caused and continue to cause Plaintiff to suffer substantial economic and non-economic damages, and severe mental anguish and emotional distress, for which Defendants are liable for monetary damages, including punitive, liquidated, treble, and/or other exemplary damages.

## JURISDICTION AND VENUE

4.       The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA, Title VII and the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

5.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events and omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district, and because the Corporate Defendants are doing business in the State of New Jersey and subject to personal jurisdiction in this district.

## PARTIES

6.       Plaintiff Janice Yun is a resident of the State of New Jersey. At all relevant times, Ms. Yun met the definition of an "eligible employee" and/or "employee" under all applicable statutes, having worked at Paris Baguette for five years until her constructive discharge in August 2018.

7.    Defendant Paris Baguette America, Inc. ("PB America") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

8.    Defendant Paris Baguette Bon Doux, Inc. ("PB Bon Doux") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

9.    Defendant Paris Baguette Family, Incorporated ("PB Family") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

10.    Defendant Paris Baguette USA Incorporated ("PB USA") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

11.    Defendant Paris Croissant Group d/b/a Paris Baguette ("Paris Croissant") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

12.    Defendant SPC Group d/b/a Paris Baguette ("SPC") is corporation doing business in New Jersey, which, at all relevant times, has met the definition of an "employer" and/or "covered employer" under all applicable statutes.

13.    The Corporate Defendants, which own, operate and do business as fast-casual bakery cafes under the trade name Paris Baguette, selling pastries, coffee, desserts, sandwiches, salads, specialty drinks, and other similar items in several states, including New Jersey, upon information and belief, share common ownership, common premises, common directors and/or officers, common financial control and centralized labor relations such that

they are so interrelated that they constitute a single, integrated enterprise or joint employer.

## PROCEDURAL REQUIREMENTS

14.    Plaintiff has complied with all statutory prerequisites to filing this action.

15.    On or about October 30, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of Title VII, the EPA and ADA. The allegations of discrimination, harassment and retaliation contained in the charge arise out of the same facts and occurrences alleged herein.

16.    Upon information and belief, the EEOC imminently will issue Plaintiff a right to sue letter concerning her allegations of discrimination, harassment in violation of Title VII, the EPA and ADA, promptly  and retaliation after which Plaintiff will amend this Complaint to include claims under Title VII, the EPA and ADA that are essentially identical to her NJLAD causes of action asserted herein.

17.    Any and all other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment with Paris Baguette.**

18.    Ms. Yun joined Paris Baguette in 2013 as a store development manager, and was soon promoted to a senior manager role focused on franchise sales, lease negotiations, and related interactions with both franchisees and franchisee candidates.

19.    Ms. Yun worked extremely hard to meet the Company's goals because she loved her job and was grateful for the opportunity to advance her career when hired by Paris Baguette's COO at the time, Ujin Shin.

20.    Over the course of her employment, Ms. Yun never received any complaints concerning her work performance, and was never subjected to discipline of any sort. To the contrary, the Company consistently commended Ms. Yun not only for the quality of her work,

but also for her commitment to the Company, and consistently awarded her merit pay increases up to the point of her pregnancy.

21.     Throughout her employment, Ms. Yun outperformed both Company targets and all of her male counterparts in numbers of new franchises opened for the Company. Despite her superior performance, she was compensated far below her male counterparts because of her gender, and later because of her pregnancy and pregnancy-related disabilities.

**When She Became Pregnant, Plaintiff Was Sexually Harassed and Subjected to Abusive and Retaliatory Working Conditions by Her New Supervisor.**

22.     Beginning in September 2016, Ms. Yun's direct reporting line was changed. She no longer reported to the Company's Chief Development Officer Larry Sidoti, and was required to report to the newly hired Franchise Director Dave Gleason. She was the only employee under Gleason's direct supervision.

23.     The next month, with Defendants' knowledge, Ms. Yun underwent an IVF procedure in an attempt to become pregnant. She had spoken openly to her managers and co-workers alike about her infertility treatments, as well as her plans to have a second baby one year after her first baby due both to her age and difficulties becoming pregnant.

24.     Almost immediately after informing the Company that she was pregnant, Gleason began to sexually harass Ms. Yun. He became verbally abusive, called her an "idiot," and exploited her vulnerable physical and emotional state by threatening that he "can replace her any time" he wanted.

25.     Gleason also subjected her to unwelcome and highly inappropriate sexual harassment, frequently making references to her "having an embryo implanted down there [gesturing to her vagina]," while laughing and belittling her. He also repeatedly asked Ms. Yun to "divorce your husband and marry me" and to become his "office wife."

26.     Ms. Yun's pregnancy was a high-risk pregnancy. In addition to the IVF treatment, she developed gestational diabetes, severe nausea, more than 45-pounds of water-retained weight gain, and painful difficulty walking throughout her pregnancy.

27.     These pregnancy-related disabilities, coupled with Gleason's abusive and improper treatment of her, caused Ms. Yun to feel depressed and become upset to the point of crying frequently in the workplace. Gleason responded by giving her unwelcome "hugs" and

ushering her into his private office where he would sit right up against her on his couch in an unwelcome attempt to "comfort" her.

28.     She resisted his inappropriate conduct by stating that she was OK, and that she just wanted to be left alone. Unless she endured his harassment, however, Gleason reacted with anger and hostility, and a pattern of piling "busy work" onto her already full workload while threatening to replace her. Pregnant, and suffering a number of disabling medical conditions that required she maintain her medical coverage, Ms. Yun felt extremely vulnerable to Gleason's threats to her continued employment.

29.     Ms. Yun complained to Paris Baguette's Korea audit department, as well as Sidoti, and sought out their help to stop Gleason's persistent harassment.

30.     The work environment was so unbearable by December 2016 that Ms. Yun could not return to the office. She requested, and Sidoti agreed, to allow her to take a short-term, personal leave of absence to gain some relief from the stress, anxiety, and other difficulties she was suffering as a result of Gleason's demeaning sexual harassment. When she returned from this leave, her working conditions had only worsened.

31.     Ms. Yun returned to find that her office had been moved to the second floor, right next to Gleason's office. He told her that he did this because he "needed her next to him." In truth, Gleason was upset that Ms. Yun had complained about him to Sidoti and that Sidoti had approved her requested leave of absence.

32.     What made this retaliatory office relocation particularly abusive was that it was designed to cause Ms. Yun significant physical pain throughout the day by forcing her to walk up and down stairs repeatedly to complete her job.

33.     As Gleason knew, Ms. Yun had great difficulty walking during her pregnancy,

and she was in constant pain due to her badly swollen body. Yet, in relocating her to a second-floor office, he refused to move to the second floor the voluminous files she needed to perform her job, forcing her to walk up and down the stairs repeatedly during the work day.

34.     Defendants also refused her requests to accommodate her pregnancy and pregnancy-related disabilities by moving her back to her first-floor office, or alternatively by moving her files to the second floor. And, Gleason's day-to-day harassment and abusive treatment continued unabated.

35.     On multiple occasions upon her return, Ms. Yun was forced to work late until 9:00pm, despite needing to take medication and regulate her meal intake for gestational diabetes consistent with her doctor's orders to avoid the condition becoming dangerous to her baby and herself.

36.     Defendants forced her to stay late, not for substantive work, but merely to translate between English and Korean during video-conferenced franchisee candidate interviews, which was a task that numerous other Paris Baguette employees based in Southern California could handle via video-call without staying well past normal working hours or risking their health, as Ms. Yun was forced to do.

37.     Despite pointing this out and requesting that another employee be assigned to translate these conference calls, Gleason and Sidoti told Ms. Yun that they would be "very disappointed in her" if she did not stay late for these calls. They also then left her completely alone after these calls, late at night in an unsafe neighborhood and in disregard of her health conditions, to close up the office by herself.

38.     Despite Ms. Yun's pregnancy-related disabilities, Defendants required her to work through the last business day before she delivered her newborn baby, denying her entitlement under New Jersey law to four-weeks of paid disability leave prior to her due date.

39.     Although she requested this accommodation, which was her legally protected right, it was denied and she feared that complaining further would result in her losing her job and attendant medical benefits while pregnant as Gleason had threatened multiple times since she became pregnant.

**Defendants Failed to Reinstate Plaintiff to Her Same Position Following Maternity Leave, Instead Demoting Her and Denying Her Equal Pay and Working Conditions Enjoyed by Male Employees.**

40.     After being denied her full federal and state statutory leave benefits associated with her pregnancy, Ms. Yun returned from her protected maternity leave on or about November 20, 2017.

41.     She was distressed to find out that she was not reinstated to her same position, or even a substantially similar position. Instead, she found herself "dumped" into a completely new, lesser role in which she had no prior experience, without any training or other explanation of her new duties, no orientation, and no direct supervisor or other personnel support.

42.     Despite a record of excellent performance in her prior position, Ms. Yun was no longer doing her previous job duties involving franchise sales, lease negotiations and franchisee interactions. Instead, her job duties had been given to a newly hired male employee named Daryl Meyer, who was hired to replace Ms. Yun and given significantly more favorable compensation terms than she received.

43.     She made efforts to understand why she was assigned to this different, lesser position in which she had no experience, instead of returned to her same job, and requested help getting oriented to her new job duties and where she now fit in at the Company. However, she was put off, ignored, and essentially left in a corner until her unremedied job conditions became so intolerable that she was forced to resign.

44.     It became clear that Paris Baguette actually demoted Ms. Yun into a dead-end job

with no real duties in order to pressure her to leave the Company.

45.     First, upon meeting with Ms. Yun during his visit to the East Coast shortly after hired Meyer to replace her, the new COO Defendant Young Choi interrogated her about why the Company needed two people doing the same job function. She felt Choi was attempting to pressure her into resigning.

46.     Second, in response to her requests for an explanation of her new job, the Company presented her with a written job description that confirmed she was demoted from her "Senior Manager" position to a lesser "Manager" level.

47.     Third, although the Company changed her title back to Senior Manager in response to her objections to the demotion, Ms. Yun's job duties were never reinstated. Instead, her job duties had been given to Meyer, who had been hired to replace her and given significantly more favorable compensation terms than she received when performing that job.

48.     Fourth, Ms. Yun was denied her annual performance review and merit pay increase in January 2018. When she questioned why she was being denied the same pay increase given to other Paris Baguette employees, the Company explicitly told her that she was "not eligible" for any merit pay increase because of her pregnancy leave.

49.     Fifth, after her actual day-to-day job duties had been reduced to virtually nothing, the Company effected (and communicated to Ms. Yun's co-workers) a reporting line change in which she thereafter was forced to report to the male employee who was hired at the same Senior Manager level she occupied prior to her pregnancy and later was reinstated to in name only following her demotion. Ms. Yun, a Senior Manager herself, was the only employee required to endure the humiliation of reporting to another Senior Manager, something that the Company's HR representative immediately recognized was not right when Ms. Yun complained and subsequently resigned when her intolerable working conditions were not remedied.

50.     Both before and after her pregnancy, there have been male employees in comparable jobs, who were paid more money (despite Ms. Yun outperforming them during her employment). Defendants likewise have not subjected similarly situated male employees to demotions and/or the same demeaning supervisory structure and lack of meaningful job duties following a legally protected leave of absence.

51.     The Company further signaled its hostility to Ms. Yun on the basis of her pregnancy, and confirmed that she was no longer welcome at Paris Baguette, by implementing a new health insurance plan that specifically removed coverage for IVF treatments (notwithstanding New Jersey's express prohibitions against discriminating against IVF treatments under the New Jersey Family Building Act).

**Defendants Constructively Discharged Plaintiff in Violation of Both Federal and State Law.**

52.     After a very successful and promising career with Paris Baguette, Ms. Yun has been forced to endure almost two years of abusive and unlawful employment actions triggered by her pregnancy.

53.     Specifically, as alleged above, Ms. Yun was subjected to intolerable working conditions that included (a) being repeatedly threatened with termination by her direct supervisor; (b) being pressured to resign by the Company's COO; (c) being demoted both in title and in her day-to-day job duties; (d) being denied merit pay increases, as well as her performance reviews, on the basis of her protected maternity leave; and (e) being stripped of her job duties and put into a far less desirable position while subjecting her to an unjust and humiliating superior-subordinate reporting relationship with a male peer.

54.     These intolerable working conditions culminated in the destruction of Ms. Yun's career. Having suffered the removal of her job duties in favor of a newly hired and more highly

compensated male employee, and then making a male peer her direct superior in complete disregard of her strong record of performance in the job she occupied up to the point of her pregnancy), Ms. Yun was left with no meaningful role in the Company and was completely demoralized over the pervasive unlawful treatment she suffered.

55.    On or about August 6, 2018, Defendants constructively discharged Ms. Yun as foreshadowed by Defendant Choi months earlier.

56.    Thereafter, Defendants subjected Ms. Yun to a retaliatory attempt to fabricate performance issues after-the-fact based on an alleged "complaint" about her from more than a year earlier. Mid-way into their retaliatory interrogation of Ms. Yun, in apparent recognition that their conduct was unlawful, the Company abruptly terminated the meeting. Upon information and belief, Defendants have engaged in an ongoing, retaliatory effort to "drum up" false accusations against Ms. Yun to try to justify their constructive discharge after-the-fact.

57.    The Company also attempted to force Ms. Yun into submitting a "voluntary resignation" letter in a cynical and retaliatory attempt to insulate Defendants from her constructive discharge claims, falsely characterizing this as a company "requirement" necessary to receive the pay and benefits to which she was entitled at termination.

### FIRST CAUSE OF ACTION
### (Violations of the Family Medical Leave Act)

58.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 57, inclusive, as if fully set forth herein.

59.    At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. Similarly, at all times relevant herein, Defendants were and are a "covered employer" within the meaning of the FMLA.

60.    Defendants violated the FMLA by unlawfully interfering with, restraining, or

denying the exercise of and/or attempts to exercise Plaintiff's rights thereunder by, <u>inter alia</u>, (i) denying her a full 12 weeks of FMLA-protected leave; (ii) refusing to reinstate her to the same or substantially equivalent position for which she was fully qualified and capable of performing; (iii) denying her merit pay increases and annual performance reviews because of her FMLA-protected leave; (iv) subjecting her to harassment, abusive working conditions, demotion, and constructive termination of her employment for exercising and/or attempting to exercise her rights under the FMLA; and (v) failing to comply with FMLA notice, posting and designation obligations resulting in the denial of continued accrual of holiday, vacation, PTO and other benefits during the period of Plaintiff's protected leave.

61.    As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

62.    Defendants' unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the Family Medical Leave Act)

63.    Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 62, inclusive, as if fully set forth herein.

64.    At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. Similarly, at all times relevant herein, Defendants were and are a "covered employer" within the meaning of the FMLA.

65.    Plaintiff exercised and/or attempted to exercise her right to protected leave under the FMLA associated with her pregnancy, pregnancy-related serious health conditions, and/or

the birth of her child.

66.     In retaliation for Plaintiff exercising and/or attempting to exercise her rights under the FMLA, she suffered the following adverse employment actions: (i) severe and pervasive harassment and abusive work conditions, including threats to terminate her employment; (ii) refusal to reinstate her to the same or substantially equivalent position after returning from leave; (iii) removal of her job duties and reassignment of her job duties to a newly hired male replacement; (iv) denial of merit pay increases and annual performance reviews to which she was entitled; (v) demoting her and constructively terminating her employment; and (vi) fabricating false justifications as a pretext for unlawfully terminating her employment.

67.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of the FMLA, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

68.     Defendants' unlawful actions constitute bad faith, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

### THIRD CAUSE OF ACTION
**(Violations of the New Jersey Family Leave Act and Temporary Disability Benefits Law)**

69.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 68, inclusive, as if fully set forth herein.

70.     Defendants violated Plaintiff's rights under the NJFLA (including related Temporary Disability Benefits Law provisions) by, inter alia, (i) denying her a full 12 weeks of NJFLA-protected leave following the birth of her child; (ii) denying her four weeks of paid leave prior to her due date; (iii) denying her six weeks of paid temporary disability insurance benefits; (iv) refusing to reinstate her to the same or substantially equivalent position with like

seniority, status, benefits, pay and other terms and conditions of employment; (v) denying her

merit pay increases and annual performance reviews because of her NJFLA-protected leave; (vi)

subjecting her to demotion and constructive termination of her employment for exercising

and/or attempting to exercise her rights under the NJFLA; and (vii) failing to comply with

NJFLA notice, posting and designation obligations resulting in the denial of continued accrual

of holiday, vacation, PTO and other benefits during the period of Plaintiff's protected leave.

71.     As a direct and proximate result of Defendants' unlawful conduct in violation of

the NJFLA (including related Temporary Disability Benefits Law provisions), Plaintiff has

suffered and continues to suffer harm for which she is entitled to an award of monetary

damages and other relief.

72.     Defendants' unlawful actions constitute bad faith, malicious, willful and wanton

violations of the NJFLA for which Plaintiff is entitled to an award of punitive and other

exemplary damages.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NJFLA)

73.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1

through 72, inclusive, as if fully set forth herein.

74.     Plaintiff exercised or attempted to exercise her right to protected leave under the

NJFLA associated with her pregnancy and/or birth of her child.

75.     In retaliation for Plaintiff exercising and/or attempting to exercise her rights

under the NJFLA, she suffered the following adverse employment actions: (i) refusal to

reinstate her to the same or substantially equivalent position with like seniority, status, benefits,

pay and other terms and conditions of employment; (ii) removal of her job duties and

reassignment of her job duties to a newly hired male replacement; (iii) denial of merit pay

increases and annual performance reviews to which she was entitled; (iv) demoting her and

constructively terminating her employment; and (v) fabricating false justifications as a pretext

for unlawfully terminating her employment.

76.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct

in violation of the NJFLA, Plaintiff has suffered and continues to suffer harm for which she is

entitled to an award of monetary damages and other relief.

77.     Defendants' unlawful actions constitute bad faith, malicious, willful and

wanton violations of the NJFLA for which Plaintiff is entitled to an award of punitive and

other exemplary damages.

## FIFTH CAUSE OF ACTION

**(Pay Discrimination in Violation of the NJLAD, as Amended by the Allen Equal Pay
Act)**

78.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1

through 77, inclusive, as if fully set forth herein.

79.     Plaintiff is female and, between 2013 and 2018, worked for Paris Baguette as

both a store development manager and a senior manager focused on franchise sales, lease

negotiations, and related interactions with both franchisees and franchisee candidates.

80.     Over the course of her employment, Plaintiff outperformed both Company

targets and all of her male counterparts in numbers of new Paris Baguette franchises opened.

Despite her superior performance, Plaintiff was compensated far below her male counterparts

because of her gender or sex.

81.     Defendants discriminated against Plaintiff on the basis of her female

gender or sex in violation of the NJLAD, as amended, by paying her less than similarly

situated male employees, including by paying her a lesser base salary, denying her

equal merit pay increases, and/or paying male employees a commission based on

franchise openings while denying Plaintiff the same opportunity to earn commissions for the same work.

82.     As a direct and proximate result of Defendants' unlawful pay discrimination in violation of the NJLAD, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief, including three times her monetary damages.

83.     As a direct and proximate result of Defendants' unlawful pay discrimination in violation of the NJLAD, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

84.     Defendants' unlawful pay discrimination constitutes a bad faith, malicious, willful and wanton violation of the NJLAD for which Plaintiff is entitled to an award of punitive, treble and other exemplary damages.

## SIXTH CAUSE OF ACTION
### (Violations of the NJLAD for Pregnancy, Gender and Disability Discrimination)

85.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 84, inclusive, as if fully set forth herein.

86.     Plaintiff is female and, during her employment with Paris Baguette, became pregnant in or around December 2016. Defendants had knowledge of Plaintiff's IVF treatments and actual pregnancy in and around this same time.

87.     Defendants discriminated against Plaintiff in violation of the NJLAD by subjecting her to disparate treatment, harassment and a hostile work environment based upon her pregnancy and her female gender or sex, including but not limited to, by (i) denying her

requested accommodations in her working hours, job duties, office location, and other terms and conditions of employment; (ii) removal of her job duties and reassignment of her job duties to a newly hired male replacement; (iii) refusal to reinstate her to her same position following her pregnancy; (iv) denial of merit pay increases and annual performance reviews to which she was entitled; and (v) demoting her and constructively terminating her employment.

88.     Defendants discriminated against Plaintiff in violation of NJLAD by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff and threats to terminate her because her pregnancy and her female gender or sex.

89.     In addition, and independent of Defendants' other discriminatory conduct, Defendants discriminated against Plaintiff based on her pregnancy-related disabilities and medical conditions in violation of the NJLAD.

90.     Specifically, as a result of her pregnancy, Plaintiff developed multiple disabilities and/or medical conditions of which Defendants had notice, including but not limited to gestational diabetes.

91.     Defendants discriminated against Plaintiff in violation of the NJLAD by subjecting her to disparate treatment, harassment and a hostile work environment based upon her disability and/or medical conditions, including but not limited to, by (i) denying her requested accommodations in her working hours, job duties, office location, and other terms and conditions of employment; (ii) removal of her job duties and reassignment of her job duties to a newly hired male, non-disabled replacement; (iii) refusal to reinstate her to her same position following her pregnancy-related disabilities; (iv) denial of merit pay increases and annual performance reviews to which she was entitled; and (v) demoting her and constructively terminating her employment.

92.     Defendants discriminated against Plaintiff in violation of the NJLAD by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff and threats to terminate her because her disability and/or medical conditions under the NJLAD.

93.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NJLAD, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

94.     Defendants' unlawful discriminatory conduct constitutes a willful and wanton violation of the NJLAD, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive and other exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NJLAD)

95.     Plaintiff hereby repeats and realleges each and every allegation in paragraphs 1 through 94, inclusive, as if fully set forth herein.

96.     During the course of her employment with Paris Baguette, Plaintiff made protected complaints against and/or opposed Defendants' discrimination based on her pregnancy, her female gender or sex, and her disabilities or medical conditions. Plaintiff's complaints and/or opposition were protected activity under the NJLAD.

97.     Defendants then retaliated against Plaintiff for her protected activity by, inter alia, (i) subjecting her to severe and pervasive harassment and abusive work conditions,

including threats to terminate her employment; (ii) moving her office and assigning her work for the purpose of causing her physical pain and jeopardizing her health and well-being; (iii) refusing to reinstate her to the same position after her pregnancy and disabilities; (iv) removal of her job duties and reassignment of her job duties to a newly hired male, non-disabled replacement; (v) denial of merit pay increases and annual performance reviews to which she was entitled; (vi) demoting her and constructively terminating her employment; and (vii) fabricating false justifications as a pretext for unlawfully terminating her employment.

98.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits.

99.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NJLAD, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

100.     Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of the NJLAD, was outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive and other exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against all Defendants, containing the following relief:

A.     A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New Jersey;

B.      An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      An order directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action (including reinstatement) as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiff;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering, as well as any other physical or mental injuries;

F.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

G.      An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H.      An award of punitive damages;

I.      An award of liquidated damages pursuant to the FMLA and EPA;

J.     An award of treble damages pursuant to the NJLAD, as amended;

K.     An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law;

L.     Prejudgment and post-judgment interest on all amounts due to the fullest extent permitted by law; and

M.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: November 29, 2018

Respectfully submitted,

JAE LEE LAW, P.C.

By: _____
Shane A. Sullivan

2050 Center Avenue, Suite 120
Fort Lee, NJ 07024
Telephone: (201) 346-3800
Facsimile: (212) 346-3822

COUNSEL FOR PLAINTIFF